The next case on this morning's docket is the case of Kenneth Craig et al. v. Roger Steven Craig et al. And we have here Dr. Helen. We have Mr. Brian Rue. And then for the academician we have Richard Lewis. And you may proceed as soon as you're prepared to. May I please report? My name is Jason Rue and I represent the appellant Roger and Native Craig et al. This appeal arises from a judgment that was entered against my clients on June 15, 2011. The trial court found three bank accounts held by Jesse Craig that was transferred by Jesse into a joint account with Rider Survivorship with Roger Craig. The appellant Roger Craig filed a motion to reconsider on June 15, 2011 and was denied on October 18, 2011. And the appellant Roger filed a notice of appeal on November 18, 2011. The issue before the court today is whether or not the trial court erred in finding that the transfer of the bank accounts by the decedent Jesse Craig to Roger Craig by way of a joint account with Rider Survivorship was fraudulent. In this matter, there was a fiduciary relationship that existed between Roger and his father, Jesse, due to the fact that Roger was appointed power of attorney for Jesse on February 19, 2008. Therefore, presumption of fraud attached when the joint account was created, which required a showing of evidence to overcome said presumption, according to the holding in NRA estate of Teal. And according to the holding in RISO v. RISO, to overcome this presumption, the party had to show by clear and convincing evidence that there was a frank disclosure, adequate consideration was given by the person in the position of trust, and that the other party had a competent and independent advice before completing the transaction. The facts of this case is that Roger and his wife Anita Craig took care of Jesse on a daily basis, demonstrated on the record by page 22. Accordingly, since 2006, Roger and his wife helped Jesse with all aspects of his life, cooking and cleaning, helped pay his bills, took him to the bank when he wanted to go to the bank, and so forth, which is also demonstrated on page 21 of the record. In January of 2009, Jesse's three accounts were transferred into a joint account, a joint tenancy with Roger's drivership, by Jesse. Also in that January, Jesse had Anita Craig taken to the bank to conduct his normal bank, at which time Jesse met with Jane Pinkham, an employee of the State Bank of Williamson, for 11 years at that time. According to the record on page 33, Ms. Pinkham had met with Jesse 10 to 15 times during her career at the bank. Ms. Pinkham also testified, and she advised Jesse at that time, that creating a joint account with Roger's drivership, that Roger could come and clean out the accounts at any time, as soon as the account was created. Ms. Pinkham further advised Jesse that he could make Roger an authorized signer for a payable on debt account, and Ms. Pinkham acknowledged that Jesse understood that if something happened to him, Roger was going to get all the money. However, Jesse, after being admonished by the bank employee, still persisted in setting up this joint account. Ms. Pinkham also testified that Jesse was coherent, a sound mind, didn't appear to be under the influence of drugs or alcohol at the time, which is demonstrated on the record on page 35. The fact is that nothing in the record indicates that Roger Craig took any documents to Jesse, or even asked for that matter, for any money, or creating any accounts. As a matter of fact, the record is absent of any evidence that Roger used his position of trust or influence, much less undue influence, concerning this particular transaction, or any other matter concerning his father. When the joint account was created, Jesse initiated the trip to the bank, received confident and independent advice from the bank employee, Ms. Pinkham. As to all ramifications of the joint account with Roger's survivorship, along with possible alternatives to creating a joint account. Any benefit that Roger received was the result of Jesse's generosity, not being from a position of trust or undue influence. In the Fourth District, the case of Venray Estate of Rival provides the best analysis for distinguishing between accounts that were properly transferred and fraudulently transferred. In Rival, the decedent's grandson was named power of attorney after she moved into his home. The numerous accounts were transferred either into joint accounts with the defendant, or were paid while in debt with the defendant named as the beneficiary. The court held that any accounts that were transferred by the defendant using the power of attorney to sign signature cards, or transferred by him bringing the signature cards to the decedent at his home, were ruled fraudulently transferred. But as to the one account that was transferred in payable on debt after the decedent was named power of attorney, but was transferred by the bank by the decedent personally, the defendant was present at the bank with the decedent during the transfer. The bank employee admonished the decedent as to the consequences of his actions in creating these accounts. There was no disclosure as to any information by the defendant to the decedent or any other third party, nor was there any consideration paid by him either in this case. The account transferred was held to be a proper transfer based solely on the evidence that the bank employee had admonished the decedent, provided competent and independent advice, and then the decedent still went forward and made a decision for the account. In this case, the accounts transferred to Roger Craig are parallel to the payable on debt account in Rival, which was held to be proper. Although the defendant did not provide any disclosure as he had no specific knowledge of the account, nor did he pay any consideration to Jesse. Jesse did receive, however, competent and independent advice from Jane Pinkham, the bank employee. She advised Jesse that the transfer would allow Roger to close the account the next day, and he would also receive the money upon Jesse's death. Jesse was not paid by this admonishment, went forward, and created the account. She testified that Jesse appeared to be a sound mind and had no question as to his capability to conduct his own business at that time. A fiduciary may rebut the presumption of fraud or undue influence by clearly convincing proof that he had exercised good faith and had not betrayed the confidence repository. I mean, was there any evidence, I mean, was there any evidence at all that your client even knew he was making this transfer? At the time, I believe the record shows his wife took his dad to the bank, and he either got a call from the bank employee. She didn't even know he was there. She didn't think he was. He testified that, yeah, I was in the bank, and I got called up there to come sign some signature card. So he shows up. So he was in the bank at the same time as Jesse. And that it was his wife, it was. Yes, Roger's wife. Roger's wife that. Took him out there, which was a normal routine. They always went out there once a week, twice a week. Took him to the bank. They conducted business, which is what he thought, as a record indicates, is what Anita thought they were going out there to do. She didn't even know that they were creating this joint account. And Roger, much less, had any clue. I mean, so there's no evidence that your client urged him to do this or anything? There's just nothing in the record about that? Absolutely nothing in the record indicates that whatsoever. And as a matter of fact, the record is quite clear that he didn't know what was going on. I think there's evidence in the record that says he heard them talking, but he wasn't sitting there. He didn't know what they were doing. The case that the opposing counsel cites, Miller v. Ford, the decedent's grandson had power of attorney over a decedent, used his power of attorney to transfer money into his personal account. The court in Ford further stated that they found the presumption of fraud was not overcome. The defendant had an active role in the transfer, was in a position of trust, and did not pay after the consideration of the transfer. That's not the case we have in this case. He didn't know what was going on. His father requested to go, called Anita and said, come over, I want to go to the bank. They go to the bank. My client didn't even know what was going on. The record indicates that he had never exercised the power of attorney over his father whatsoever. He never had any conversation about creating any such accounts. He didn't have any conversation as to money with him whatsoever. What was the interim between the time the account was created and his death? I believe it was about two years. And there was no money spent? He didn't spend. The only money at the end that my client actually spent was after he died, he wrote a check for approximately 300 and some odd dollars for a funeral bill. That was it. Even today, I mean before, I believe the money was saved. He didn't spend any of it. The facts that were testified to was that Jesse was a sound mind, did not appear in any way to be under the influence of drugs or alcohol, asked to go to the bank on his own account, sat down with a bank employee, received competent and independent advice as to the ramifications of his decision, was given even alternatives to creating this account, yet Jesse Craig still persisted on his own behalf in creating these joint accounts with his son, Roger,  Therefore, since the record demonstrates clear and convincing proof that Roger never used his position for undue influence over Jesse, and according to the standards provided in rival, the trial court erred in finding that the transfer to Jesse Craig's account into a joint account with Roger was plausible. Accordingly, the trial court's decision was against the manifest way and should therefore be reversed. Thank you. Thank you, Mr. Greer. You'll have the opportunity to revive Mr. Lewis. I'm here to please support Attorney Richard Lewis representing Kenneth Craig, a plaintiff. I want to start off by emphasizing the standard of review is one of deference to the trial court unless it is clearly against the manifest way of evidence. And the reasoning behind this is because the trial judge has a duty to weigh the evidence, determine the credibility of witnesses, and also decide disputed questions of fact. What credibility issue was there here in your opinion? Well, I believe most of the testimony elicited about what occurred the days at the bank and concerning Jesse were largely only the defendants. As my clients on those days, they have jobs. They're not free to take him to the bank at any time. So I classify most of the testimony self-serving. And also the judge also got to weigh the credibility of the bank employee, Jane Beekham, and noted in his decision he found that what she described as possibly at most 30 minutes that it took to transfer these bank accounts, that it was not that it did not rise to the level of adequate and independent advice. That also hasn't been spoken about was the Jesse Craig did have mental problems. He was on painkillers. He was on antidepressants. He attempted to commit suicide at least two times, and he did ultimately commit suicide as he passed away. The judge also found that to be a factor in determining that under the three factors about whether disclosure had been made, the judge determined that no disclosure was made to anyone at all. And as far as Roger could have chosen not to sign on to the joint bank accounts because there was no need for it as he did have the power of attorney, there was no fair consideration paid for the property. Is that really a factor in this kind of a situation? I mean, it's different if he sold him his $100,000 combine for a dollar, then that would be one thing as far as dealing with his attorney, in fact. But here it's putting his name on a bank account. Well, in the estate of Teal, the defendant's side, the court in that case, noted that the person in that case didn't contribute anything to the bank accounts or didn't make a say in order to be signed on to the bank accounts to transfer property to the other bank account holder. And also, more importantly, I think it's important to focus on the fact that the judge, from seeing the witness, what they refer to as the sweaty hands, how the witness testified, their body language, the strength of their responses, that bank employee Jane Pinkham's talking to Jackson Craig was not adequate. It was a short 30-minute meeting, and that's not – she's not admonishing him the whole time. You go into the bank account, you meet with them, they have to pull up your files, they have to fill out signature cards, and it sounds like it was just rudimentary. Well, now you know he can come in and post this, and you can do these other things, but it's not clear that Jesse understood all the ramifications in that short period of time. Well, there was no evidence of actual fraud in the trial court. Is that right? Right, Judge. You relied on the presumption that if you deal with your attorney, in fact, there's a presumption of fraud. And the trial court's specific ruling was that he failed to overcome that presumption by clear and convincing evidence. Is that right? But he didn't – the evidence is undisputed that he didn't use his power of attorney to create this account, right? Was there any rebuttal when he said he didn't even know he was going to create this account? Was there any evidence to dispute that? Well, his testimony in trial was that he was not there. He did not take his father up with his wife to the bank, but that he came up later, although there were depositions beforehand that he stated that he and his wife both took him up there. Well, my point is, what else was he supposed to do to overcome this presumption? I mean, if there's no evidence that he urged him to create the account or asked him to put his name on it or didn't use his power of attorney to create the account, you know, what else is he going to prove? I mean, is it the standard that whenever he was told about the account, does he then have to take him to an attorney to be advised? There have been cases in Henry v. State v. Miller where a person talked to an actual attorney. In that case, that was not deemed to be adequate and independent because of the nature of the communication. So there's no exact standard as to what adequate and independent advice is. It's just emphasized that the judge in this case felt that Ms. Pinkham's in the state of Miller also had this reasoning for the presumption of fraud was to dissuade fiduciaries to come up with crafty financial maneuvering and able to enrich themselves. Well, there's no evidence of any of that crafty financial maneuvering here, though, right? Well, this would be by having his name attached to the joint account of private survivorship instead of actively using power of attorney. That would make it far clearer. I mean, here's a concern. I mean, in this kind of a case where there's absolutely no evidence of the guy actually doing anything, I mean, so any child who accepts the position of being an attorney in fact for their mother or father or whatever runs the risk of not being able to inherit through a bank account or whatever, even though there's no proof that they were involved in any kind of financial maneuvering. Well, Judge, if you uphold the trial judge's decision, his client's still going to receive the spare share. He's just not going to get all the money. The money will be divided evenly between the kids because the decedent died in the head state. And as my client testified at trial, his father always treated his kids fairly and evenly and didn't favor one over the other in his belief that he would want all his kids to be treated equally after he passed on. And also I'd like to point out that he didn't express that in the will. He did not have the will. The bank employee, Jane Pinkham, also was unaware that Jesse, he could only sign his name. She didn't know that he couldn't read or write. She didn't know that he was on antidepressants or any other type of medication or that he did have these problems. And also the problem of showing any undue influence is because Jesse was largely with the defendants most of the time. They were separated off from the rest of the family for large periods of time. So we don't know what may or may not have happened before Jesse executed our attorney, before they went to the State Bank of Whittington, if there was some undue influence there as to driving them. I mean, things are determined by proof, not because we just don't know something. Go ahead. I'd just like to reemphasize that the standard of abuse, unless the trial court's suggestion was against the manifest way of evidence, took all of this information into consideration. I'll be able to present it in the witness' testimony and found that the defendants did not rebut the presumption by clearly convincing evidence. Thank you. Thank you, Mr. Lewis. Mr. Drew, do you have a rebuttal? Thank you. May it please the court, counsel again. If you hang out, apparently, according to the counsel's argument, if I understand it right, if you take care of your elderly parents, or your father in this case, then you run the risk of undue influence. And then any inheritance you give on that matter, or any transaction, is going to be able to be questioned. That's not right. The bottom line is that Jesse Craig sought this transaction on his own, without any influence whatsoever by Russia, was admonished by an independent third party, which I think there was a question the counsel presented, of what constitutes independent and competent advocates. I believe that would mean to be deemed some person that knows what they're talking about, i.e., a bank employee that's been employed in such a position for 11 years. And it's a person that has no interest in the transaction, which Ms. Pinkham was exactly that. She took the time, whether, I don't think there's a timeline in any case law that I've found that demonstrates that there has to be a set time. She sat down with him. He requested a transaction. She told him quite clearly what the ramifications were, what's going to happen, some other alternatives. He said, this is what I want to do. And in her opinion, which she's dealt with him 10 or 15 times in the past, she knows what he looks like and how his demeanor is. So under her opinion, he was under no influence. Did what he wanted, and then the matter was concluded. I don't have anything further. Thank you. Thank you, Mr. Drew, Mr. Lewis, for your briefs and arguments. We'll take them now. Thank you. We're going to take a brief recess.